IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LISA JANE BAKER,

    Petitioner,

v.                                 Case No. 14-2629

DAVID BAKER,

    Respondent.

## MEMORANDUM AND ORDER

The matter before the court is respondent David Baker's (the "Father") Motion to Amend the Voluntary Return Order (Doc. 15). On December 19, 2014, petitioner Lisa Jane Baker (the "Mother") filed her complaint (Doc. 1). On December 23, 2014, the court issued a Show Cause Order (Doc. 7), setting a hearing on January 6, 2015. At the hearing, the Father voluntarily agreed to return the minor children to the Mother in England. The parties had been working on a proposed voluntary return order and continued working on that order during the hearing. From the bench, the court ruled on the parties' remaining disagreements, incorporating most of that proposed order in its ruling. (Doc. 13.) On January 14, 2015, the Father filed the motion before the court.

The Father requests the voluntary return order (Doc. 13) be modified to reflect the following:

- Father will be accompanying the minor children on the flight to England.
- The airport will now be the Manchester, England Airport, which is apparently 140 miles closer to Mother's home than London's Heathrow Airport.

(Doc. 15 at 2.) According to the Father, the Mother did not oppose these arrangements, but the Mother did request any modified order also include language such as "The Father will deliver the minor children to the Mother as soon as the minor children exit the international arrivals hall." (*Id*. at ¶ 9.)

The Father objects to that language because it addresses the custody of the children, which the Father argues is outside this court's jurisdiction under the Hague Convention on the Civil Aspect of International Child Abduction.[1]

The Mother argues that the Father has not shown any reason under Federal Rules of Civil Procedure 59(e) or 60 for the court to modify its dispositive order.  Under Fed. R. Civ. P. 60, the court may relieve a party from a final judgment or order for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  The court will therefore amend its previous order to reflect a change in circumstances that affects the court's true aim:  enforcing the Hague Convention.  Under the Hague Convention, the court must "restore the 'factual' status quo which is unilaterally altered when a parent abducts [the children]."  *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995) (citing Pub. Notice 957, 51 Fed. Reg. 10494, 10505 (1986)).  "[T]he cornerstone of the [Hague] Convention is the mandated return of the child to his or her circumstances prior to the abduction. . . ."  *Id*.  In this case, the status quo prior to the Father's alleged "abduction," is the return of the children to England because all parties—the Father , the Mother, and minor children—lived in England.  Because the Father's proposed modifications do not alter the return of the children to England, the court will modify its previous order.

The court's previous order in this case assumed the minor children would be flying unaccompanied because Father could not afford to fly the kids and him.  Therefore, the court's order stated that the children "shall be returned to [the Mother]." (Doc. 13 at ¶ 1.)  However, that language merely reflected the only option at the time:  The Mother would receive the children because the Father was not accompanying them.  In other words, the Mother was the only logical person to receive

---

[1] Congress incorporated the United States' participation in the Hague Convention by passing the International Child Abduction Remedies Act ("ICARA").  *See* 22 U.S.C. § 9001, *et. seq*.

the children upon their arrival in England.  The court did not intend to make findings concerning the minor children's *custody*, whether in the United States or England.  And the court will not do so today.

Additionally, the court's previous order, as written, limits the Father's ability to accompany the children to England.  The original order directs the Father to take certain actions when dropping the kids at the airport for their return flight.  For instance, the Father is to accompany the children to the gate, deliver the children's United Kingdom passports to the check-in clerk, and wait until the plane has departed before leaving.  The previous order's language makes it impossible for the Father to comply with the court's order *and* accompany the children.  Thus, the Father cannot, as Mother contends in her response, "simply buy a ticket on the same flight." (Doc. 16 at 5.)  If he did, he would be violating the literal terms of the order.  The court cannot enforce the status quo, as mandated by the Hague Convention, by denying the Father's ability to accompany his children back to England.  The status quo involved the entire family unit—the Father, the Mother, and the children—in England.  In other words, the status quo was not the Mother and the children in England and the Father in the United States.

The court is amending its previous order (Doc. 13) because the status quo remains restored even with the modifications below.  Because the Father is voluntarily agreeing to return the children to England, the court emphasizes that it is *not* making findings as to (1) whether the Father's actions were "wrongful" under Article 12 of the Hague Convention, or (2) the children's *custody*.

For all of the above reasons, the court now orders the following:

1. That by agreement of the parties, the minor children, A.E.B., born in 2003, and M.A.B., born in 2007, shall be returned England on Sunday, February 15, 2015.  The Father will accompany the children on the flights to Manchester, England.  The Father and the children will arrive in Manchester, England (MAN) on United Airlines, flights UA44040 and UA81.  As soon as the

itinerary is booked by the Father, the Father's counsel will provide the itinerary to the Mother's counsel.

2. The Mother shall contribute $900.00 toward the costs of the return of the minor children to England. The Father shall be responsible for all airfare costs and other fees associated with the children's flights from Kansas City International Airport to Manchester, England Airport.

3. That by agreement of the parties, the Mother shall hold the children's United States and United Kingdom passports once they return to England.

4. That by agreement of the parties, the Father shall voluntarily dismiss the custody action he filed in the District Court of Wyandotte County, Kansas, Case No. 14 DM 2296.

5. This Order is not a determination of the merits of any custody issues within the meaning of Article 19 of the Hague Convention.

6. This Amended Voluntary Return Order is made under the authority of 22 U.S.C. 9003(a), conferring original jurisdiction upon this Court, and under the authority of Article 7 of the 1980 Hague Convention.

7. The parties shall bear their own fees, expenses, and costs in this matter.

**IT IS THEREFORE ORDERED** that the Father's Motion to Amend the Voluntary Return Order (Doc. 15) is granted.

**IT IS FURTHER ORDERED** that the court's previous order (Doc. 13) is vacated, as it has been superseded by this order.

Dated this 20th day of January, 2015, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**
